## Albert Reitz, Cashier, Use of First National Bank of Salisbury, Pennsylvania, v. Somerset Telephone Company, Appellant.

*Equity—Bill in equity to compel transfer of stock—Value of stock—Findings of chancellor—Evidence—Sufficiency.*

In a bill in equity to compel the transfer of certain bank stock, or the payment of the par value thereof, a decree fixing the value of the stock, and ordering the defendant to make settlement on such findings, will not be disturbed by the appellate court, where there is sufficient evidence to support the conclusions of the chancellor.

Argued April 16, 1924.   Appeal, No. 35, April T., 1924, by defendant, from judgment of C. P. Somerset Co., sitting in Equity, Equity Docket, 1914, No. 10, in the case of Albert Reitz, cashier, use of First National Bank of Salisbury, Pennsylvania, v. Somerset Telephone Company.   Before ORLADY, P. J., PORTER, HENDERSON, KELLER, TREXLER, LINN and GAWTHROP, JJ.   Affirmed.

400 REITZ *v.* SOMERSET TELEPHONE CO., Appel.

Statement of Facts—Opinion of the Court. [83 Pa. Superior Ct.

Bill in equity to compel the transfer of bank stock or the payment of the value in lieu thereof. Before BAILEY, P. J. 20th Judicial District, specially presiding.

The facts are stated in the opinion of the Superior Court.

The court directed the defendant to pay to the plaintiff the sum of $1,980 with interest from August 1, 1922, and $110 attorney's commissions. Defendant appealed.

*Error assigned* was the decree of the court.

*Joseph Levy,* for appellant.

*Earnest O. Kooser,* and with him *Francis J. Kooser,* for appellee.

OPINION BY KELLER, J., July 2, 1924:

The First National Bank of Salisbury, Pa., (hereinafter called the bank), on August 20, 1914, filed a bill in equity against the Somerset Telephone Company, (hereinafter called the company), to compel the latter to transfer to the bank 107 shares of its preferred stock and issue a new certificate therefor, or pay the par value of the stock, with accrued interest, if the company desired to retire the stock. The bank had received the stock in 1903, as collateral for a loan nearly equal to its par value, ($25 per share), made to one Harvey M. Berkeley, at that time treasurer of the company.

In 1906 the company took steps to redeem its preferred stock,— (which was entitled to preference in the assets of the company to the extent of the par value of said stock and to preferred dividends of 6% per annum out of the net earnings, payable semiannually),—with an issue of bonds and actually retired all of it at par except the 107 shares held by said bank, and as to them Berkeley fraudulently represented that they had been surrendered, and received and embezzled the bonds issued in exchange therefor.

When demand was first made for the transfer of this stock the company contended that the certificates held by the bank were not valid or genuine; and when the bank, in the conversion of its collateral, exposed them at public sale, the company made public announcement that it would not recognize the purchasers as stockholders or as having any rights in connection with the company. The stock brought at said sale only $6.50 per share.

The genuineness of the certificates is now admitted, and the company does not oppose the entering of a money decree against it for the value of the shares, as of the date when the transfer of the stock was refused. The difficulty is in determining such value. The court found the stock was at all times worth par, and decreed that the defendant pay the plaintiff $1,980, the amount of its loss and damage incurred in the transaction,—(which was less than the par value of the stock),—with interest from August 1, 1922. The defendant has appealed, claiming that the valuation fixed by the court is excessive and not supported by the evidence.

From the foregoing recital of facts it is evident that there were serious difficulties in the way of arriving at any exact valuation of this stock. It was the only preferred stock of the company in existence since 1906; hence there were no sales in the market in 1914 to govern it. The price received at the sale of the bank's collateral was not controlling, or of any real evidential value, as the bidding had been depressed by the company's announcement that the validity of the certificates was denied and their transfer would be refused. The reports made by the company to the State in 1913 and 1914, placed a value upon the assets of the company equal to the bonds outstanding, $55,000, the floating indebtedness, $2,500, the preferred stock as above, and the common stock; and while explanations were given largely reducing these figures, even when so revised the assets were in excess of the bonds, floating indebtedness and preferred stock at par. Dividends on the common stock of 8% were paid

in 1913, and for a number of years prior thereto, and of 4% in 1914. There was evidence that in 1913-14 the company was increasing its business, earning and paying the interest on its bonds, and the dividends declared on the common stock, besides a substantial addition to surplus. It was also testified by one witness that the common stock had sold in 1912 for par and that he had never heard of its market value being less than par; while another witness said he had made inquiry of financial institutions as to the market value of the stock in 1914 and found it was worth par. While defendant's witnesses placed a less value on the stock and even declared the preferred stock was worth nothing, there was evidence to sustain the court's finding and it will not be disturbed by an appellate court in the absence of clear error.

The assignments of error are overruled and the decree is affirmed at the costs of the appellant.